UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GUILLERMO TORRES-ACEVEDO, a/k/a
Guillermo Torres,

                                      Plaintiff,

v.                                                              9:21-CV-52
                                                                    (GLS/ATB)

C.O. BLAIR,

                                      Defendant.

---

GUILLERMO TORRES-ACEVEDO, Plaintiff, pro se
BRENDA T BADDAM, Asst. Attorney General for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff brought this civil rights action asserting that defendant used excessive force against plaintiff while he was an inmate at Mid-State Correctional Facility ("Mid-State"). (Complaint ("Compl.") (Dkt. No. 1). Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that plaintiff has failed to exhaust his administrative remedies. (Dkt. No. 15). In the alternative, defendant makes a motion to dismiss plaintiff's state law claims pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 15). Plaintiff has failed to respond to the defendant's motions, despite being given a requested extension of time to do so.[1] (Dkt. Nos. 18, 19).

---

[1] Plaintiff wrote a letter to the court, stating that the prison officials were keeping his legal mail from him and was not given the defendant's motion for summary judgment. (Dkt. No. 18). Although plaintiff stated that he had filed a grievance regarding this issue, he had not received any response. (*Id.*) Plaintiff attached a copy of his grievance and a letter from the Commission of Correction stating that plaintiff must await a response from the grievance process. (*Id.*) The problem with plaintiff's submission is that plaintiff's "grievance" was dated May 12, 2021, but the defendant's motion for summary judgment was not served on plaintiff until May 24, 2021. (Dkt. No. 15-6). Thus, plaintiff could not have been referring to the defendant's motion in his grievance. In any event, based on plaintiff's claim that he had not received the defendant's motion, I gave plaintiff an extension of time

The defense motions have been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge. For the following reasons, this court agrees with defendant and will recommend dismissal of this action for failure to exhaust administrative remedies and will recommend that any state law claims be dismissed for lack of subject matter jurisdiction.

**I.     Facts**

Plaintiff alleges that at 11:45 a.m. on November 8, 2020, while plaintiff was incarcerated at Mid-State, defendant Corrections Officer ("CO") Blair called plaintiff into the hall for a pat frisk because plaintiff was braiding another inmate's hair. (Compl. at 1-2).[2] Defendant Blair told plaintiff not to braid hair in the dayroom and to "take it somewhere else." (Compl. at 2). Plaintiff alleges that defendant Blair asked plaintiff whether he had ever been patted down before, and instructed him to place his hands on the wall and spread his legs apart. (*Id.*)

Plaintiff claims that, as defendant Blair was conducting the frisk, he asked plaintiff why he was braiding the other inmate's hair, asked whether he was a "'homo,'" and asked whether the other inmate was his "boyfriend." (*Id.*) When plaintiff answered "no," defendant Blair kicked plaintiff in the leg, causing plaintiff to fall and hit his face on the ground. (*Id.*) Defendant Blair then asked plaintiff to get up and put his hands on

---

to respond to July 15, 2021, and I directed the Clerk to forward another copy of the defendant's motion to the plaintiff. (Dkt. No. 19). Plaintiff has failed to respond to the motion. The court notes that it appears from the Department of Corrections and Community Supervision ("DOCCS") that plaintiff was released from custody to parole supervision on July 7, 2021. http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/WINQ000. He has failed to file a change of address with the court.

[2] Plaintiff has numbered the pages of his complaint at the bottom of the page. Thus, the court will cite to the pages of the complaint as written by plaintiff.

the wall, but as plaintiff was complying, defendant Blair smashed plaintiff's face against the wall as he was making "sexual harassment comments" and calling plaintiff a "'fucking homo.'" (*Id.*) Plaintiff claims that defendant Blair also kicked his left leg several times, causing a cut and a bruise. (*Id.*) Plaintiff states that, on November 9, 2020, he was sent to "medical" for a "body search" due to an "investigation," and photos were taken of his injury. (*Id.*)

Plaintiff claims that defendant Blair used excessive force and sexually harassed plaintiff. Plaintiff also asserts state law claims of assault and battery. Plaintiff seeks injunctive relief and substantial monetary damages. (Compl. at 2-3).

## II.   Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The

court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

### III. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all

inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

As noted, plaintiff failed to oppose defendant's motion for summary judgment, notwithstanding the fact that he was notified of the consequences of failing to respond to such a motion. (Dkt. Nos. 15, 17). "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding pro se." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008); *Evans v. Albany Cty. Corr. Facility*, No. 9:05-CV-1400 (GTS/DEP), 2009 WL 1401645, at *6 & n.35 (N.D.N.Y. May 14, 2009) (collecting cases).

## IV. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the

defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements.  *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC").  N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility.  *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC").  *Id*. § 701.5(d).  The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance."  *Id*. § 701.3(a) (Inmate's Responsibility).  There is also a special section for complaints of harassment.  *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. Sept. 1, 2016) (quoting *Ross*, 578 U.S. at __, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still relevant. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 F. App'x at 580. An administrative procedure is "unavailable" when

> (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved

7

>  inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Ross*, 578 U.S. at __, 136 S. Ct. at 1859-60.

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Id*. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

**B.    Analysis**

Christopher Tapia, the Inmate Grievance Supervisor at Mid-State, states that on November 8, 2020, plaintiff filed a grievance,[3] alleging that defendant Blair assaulted and harassed him while using homosexual slurs. (Tapia Decl. ¶ 17 & Ex. B) (Dkt. No. 15-4). Due to the nature of the grievance,[4] it was forwarded directly to the Superintendent for investigation. (Tapia Decl. ¶¶ 9, 18). Although Inmate Grievance Supervisor Tapia states that plaintiff's grievance was denied by the Superintendent on November 16, 2020, the actual document states that the grievance was filed on

---

[3] Grievance No. MS-0265-20.

[4] As stated above, a grievance claiming staff harassment or misconduct would be sent directly to the Superintendent, rather than be considered at the IGRC level.

8

November 16, 2020,[5] and it was ***decided*** on December 17, 2020.[6] (*Compare* Tapia Decl. ¶ 18 *with* Ex. C). The Superintendent's investigation concluded that there was insufficient evidence to substantiate any malfeasance by staff.[7] (Tapia Decl. Ex. C). At the bottom of the Superintendent's response was an "Appeal Statement," which instructed the plaintiff on how to appeal the Superintendent's determination.[8] (*Id.*)

Inmate Grievance Supervisor Tapia states that a review of the records maintained at the Mid-State grievance office show that plaintiff failed to appeal the Superintendent's decision to the CORC, and there were no records of any other grievance filed by plaintiff at Mid-State relating to the facts surrounding the alleged incident herein. (Tapia Decl. ¶¶ 19, 20).

Plaintiff was incarcerated at Mid-State from October 13, 2020 to November 27, 2020. (Tapia Decl. ¶ 14). According to Anthony Rose, acting[9] IGP Supervisor at Marcy, plaintiff was transferred to Marcy Correctional Facility ("Marcy") on November

---

[5] The grievance itself was dated November 8, 2020. (Tapia Decl. Ex. B).

[6] This discrepancy in the Tapia Declaration does not alter the court's decision because defendant's brief contains the correct date (Def.'s Br. at 7). A discussed below, defendant has submitted further documentation to show that the Superintendent's decision would have been sent to plaintiff at his new facility, and an appeal was available to plaintiff after he was transferred to Marcy. The discrepancy may have been a typographical error in the Tapia Declaration.

[7] The Superintendent's response indicated that plaintiff's grievance was investigated by the DOCCS Office of Special Investigations ("OSI"). (Tapia Decl. Ex. C).

[8] Inmate Grievance Supervisor Tapia also states that plaintiff completed an orientation program which instructed him on the existence of and how to use, the grievance procedures. (Tapia Decl. ¶¶ 5-6). A copy of the document showing plaintiff's completion of this program, and thus, his familiarity with the grievance procedures is attached to the Tapia Declaration as Exhibit A. (Tapia Decl. Ex. A at 1).

[9] Rose was designated as the acting IGP Supervisor when IGP Supervisor Erin Pfendler took an extended leave of absence on April 6, 2021. (Rose Decl. ¶ 2).

9

27, 2020. (Rose Decl. ¶ 9) (Dkt. No. 15-3). At the time of the Mid-State's Superintendent's decision, (December 17, 2020), plaintiff had already been transferred to Marcy. Acting IGP Supervisor Rose states that, if an inmate is transferred prior to receiving a response to his grievance, that response would be sent directly to the plaintiff at his new facility. (Rose Decl. ¶ 11). If an inmate at Marcy received the denial of a grievance from another facility, he would be directed to mail a signed copy of the appeal statement to the IGP Supervisor at the facility in which the grievance was filed. (Rose Decl. ¶ 12) (citing 7 NYCRR § 706(h)(2)). A review of the documents maintained at Marcy show that plaintiff did not attempt to appeal his grievance while he was at Marcy by sending it to the officials at Marcy.[10] (Rose Decl. ¶ 16).

To confirm that plaintiff failed to appeal the denial of his grievance to the CORC, defendant has filed the declaration of Rachael Seguin, the Assistant Director of the IGP for DOCCS. (Seguin Decl. ¶ 1) (Dkt. No. 15-5). Assistant Director Seguin declares that she made a diligent search of the CORC records for appeals received from plaintiff relating to the allegations made in this action. (Seguin Decl. ¶ 1). The computer print-out which reflects these records is attached to the Seguin Declaration as Exhibit A. (Seguin Decl. Ex. A). These records include both active and closed cases, and they show that plaintiff has never filed any grievance appeal to the CORC the entire time that he was incarcerated with DOCCS, while he was incarcerated under DIN No. 20-B-0756. (*Id.*) Assistant Director Seguin states that while plaintiff was incarcerated at both

---

[10] If plaintiff attempted to file the appeal of his Mid-State grievance by sending it to officials at Marcy, the appeal document would have been returned to him, he would have been given a copy of DOCCS Directive # 4040, and he would have been instructed to send the appeal to the IGP Supervisor at Mid-State. (Rose Decl. ¶ 14).

Mid-State and Marcy, he had access to the grievance process and had the opportunity to appeal the denial of his grievance at either facility. (Seguin Decl. ¶ 13).

Because plaintiff failed to appeal the denial of his grievance to the CORC, he failed to exhaust his administrative remedies. Defendant has established that the administrative remedies were "available" to plaintiff, even after he was transferred to Marcy from Mid-State. Plaintiff has failed to respond to the defendant's motion, and thus, has not challenged the availability of those administrative remedies. Thus, plaintiff's complaint may be dismissed for failure to exhaust.

The Court may dismiss a claim without prejudice for failing to exhaust administrative remedies if the plaintiff may still pursue his administrative remedies. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004). However, the Court may dismiss the claim with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Id.* at 88. In this case, the time for plaintiff to appeal to the CORC has long expired. In addition, as stated above, it appears that plaintiff has been released from incarceration, and exhaustion of administrative remedies is now impossible. Thus, plaintiff's section 1983 claims may be dismissed with prejudice.[11]

## V.     State Law Claims

### A.     Legal Standards

Section 24 provides immunity for DOCCS employees from lawsuits based on

---

[11] The court also notes that, to the extent that plaintiff requested injunctive relief, his release from incarceration would moot any such claim. *See Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009).

acts or omissions within the course of their employment and requires such actions be brought in the New York Court of Claims as a claim against the state. *Mann v. Martingano*, 9:19-CV-478 (LEK/TWD), 2020 WL 872441, at *6 (N.D.N.Y. Jan. 30, 2020), *report-recommendation adopted*, 2020 WL 871181 (N.D.N.Y. Feb. 21, 2020) (citing inter alia N.Y. Correct. Law § 24). If a plaintiff brings such an action in federal court, the court should dismiss the state law claims for lack of subject matter jurisdiction. *Id.* (citing *Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996); *Joy v. New York*, No. 5:09 Civ. 841, 2010 WL 3909694, at *4-5 (N.D.N.Y. Sept. 30, 2010) (collecting cases)).

**B.    Analysis**

The court also agrees with the defendant that the state law claims against him may be dismissed for lack of subject matter jurisdiction under N.Y. Corrections Law § 24. Plaintiff's claims herein clearly deal with a DOCCS employee who was acting within the scope of his employment. Immunity under this statute has been recognized in the context of an action for assault. *See Lewis v. Stanton*, 9:13-CV-1172 (LEK/TWD), 2014 WL 3106566, at *5 (N.D.N.Y. July 7, 2014), *adopting report-recommendation*. Thus, plaintiff's state law claims may be dismissed under section 24.

Defendant requests that the court dismiss plaintiff's state law claims with prejudice. If an action is dismissed for lack of subject matter jurisdiction, the court is without power to dismiss with prejudice, and any dismissal must be without prejudice. *See Faculty v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject

matter jurisdiction does not exist.") However, the court may dismiss without prejudice, while denying leave to amend based on the lack of subject matter jurisdiction. *See Guillory v. Bishop Nursing Home*, 5:21-CV-410 (MAD), 2021 WL 2431259, at *3 (N.D.N.Y. June 15, 2021) (dismissing the complaint "without prejudice" and "without leave to amend" because the Court "lack[ed] . . . subject matter jurisdiction.")

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendant's motion for summary judgment (Dkt. No. 15) be **GRANTED**, and the complaint **DISMISSED WITH PREJUDICE AS TO THE PLAINTIFF'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIMS**, and it is

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 15) be **GRANTED**, and the complaint **DISMISSED WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND, FOR LACK OF SUBJECT MATTER JURISDICTION AS TO PLAINTIFF'S STATE LAW CLAIMS**, and that the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: October 15, 2021

                                        Hon. Andrew T. Baxter
                                        U.S. Magistrate Judge